UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 5:11-CV-92-H

RONALD L. TOLBERT                                                    PLAINTIFF

v.

KENTUCKY FARM BUREAU MUTUAL
INSURANCE COMPANIES and SOUTHERN
FARM BUREAU LIFE INSURANCE CO.                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Ronald Tolbert ("Tolbert"), brought this action under the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, to challenge the determination of

disability and life insurance benefits made by Southern Farm Bureau Life Insurance Company

("Southern Farm").  Plaintiff also sought payment from Kentucky Farm Bureau Mutual

Insurance Companies ("KFB"), his former employer, for his 2006 annual bonus.  KFB has

moved for summary judgment and Tolbert has since withdrawn that claim.  Pl.'s Reply 5.  With

no claims remaining against it, KFB will be dismissed from the case.  Southern Farm has moved

for summary judgment on its counterclaim against Tolbert to recover the $10,661.15 it claims to

have overpaid in disability benefits.

I.

This Court reviews de novo a determination of benefits under an ERISA plan unless the

plan confers discretionary authority on the plan administrator – in this case, Southern Farm – to

determine eligibility or construe terms of the plan.  *Fahner v. United Transp. Union Discipline*

*Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011) (quoting *Firestone Tire & Rubber Co.*

*v. Bruch*, 489 U.S. 101, 115 (1989)).  The parties agree that Southern Farm had no such

discretionary authority and de novo review is appropriate.

Plaintiff has moved for summary judgment to set aside Southern Farm's determination of his benefits.  Summary judgment is not an appropriate procedural vehicle for resolving an ERISA suit.  *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).  Instead, the Court undertakes a de novo review of the administrative record, "render[ing] findings of fact and conclusions of law accordingly."  *Id.*  The Court may consider evidence outside of the administrative record only when offered to challenge the process of an ERISA benefits determination rather than the substance of that decision.  *Id.*  Here, Plaintiff has only challenged the substance of Southern Farm's decision.  Thus, the Court limits its review to the administrative record.

II.

The Court will briefly summarize the facts in this case.  Tolbert suffered an injury in May 2006 and a series of hospitalizations and a surgery followed.  He returned to work at KFB but had occasional absences related to his medical issues in July and August.  He reached the age of 65 in late August while he continued to be a full-time employee of KFB.  He suffered a serious kidney infection on August 31, 2006 and went on leave pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

While on leave, Tolbert applied for long-term disability benefits, which Southern Farm approved in January 2007.  He also began receiving payments from his employer pension and Social Security benefits.  Southern Farm initially set Tolbert's disability benefit at $2,537.50 per month, but subsequently reduced that award to $35.52 per month to account for Tolbert's separate retirement and Social Security benefits.  Southern Farm also reduced Tolbert's life

2

insurance coverage from $38,291 to $5,000.  Tolbert unsuccessfully appealed these

determinations and then filed this lawsuit.

III.

Plaintiff contends the reduction of his monthly disability payments from $2,537.55 per

month to $32.52 per month was contrary to provisions of the long-term disability plan.  The

parties agree the relevant language in the plan is under the heading "Benefit Reductions."  It

states:

> "While an employee is disabled, he or she may be eligible for benefits from other
> sources. If so, the Company will reduce the benefit that it pays by the amount of
> other benefits that are paid or payable.
>
> These are the other income sources which will reduce the gross benefit paid by
> the Company.
>
> (1) Amounts paid or payable for the same disability under any workmen's
> compensation acts or laws, and
>
> (2) The employee's primary insurance amount to which he is (or would be upon
> proper application) entitled under the Federal Social Security Act as in effect at
> the time this reduction provision is first applied to such participant with respect to
> the current period of disability, and
>
> (3) Any Retirement Benefits which are paid, other than return of employees
> contribution paid in a lump sum, under the covered employees Retirement Plan.
>
> The term "Primary Insurance Amount" as used herein means the monthly
> amount of the primary old age insurance benefit payment and disability
> payment which an employee would on proper application and without engaging
> in disqualifying employment, be entitled to receive on his or her own account
> (without regard to any benefits payable in respect of his or her own dependents)
> upon disability under the Federal Social Security Act or any Federal legislation
> supplementary or incorporating such Act or the benefits provided therein."

Plaintiff does not dispute that Southern Farm appropriately reduced his disability benefit

by $641.03 per month to offset his pension payments, which qualify as "Retirement Benefits."

3

He only challenges the offset of $1,864 per month applied to his Social Security benefits.  He argues that Southern Farm could only reduce his disability benefit by $261.90, which he claims is the total amount of Social Security *disability* benefits he received.[1]  Southern Farm argues that any Social Security benefit Tolbert received – whether on account of his age or disability – reduced his benefit under the long-term disability plan.[2]

The definition of "Primary Insurance Amount" in the long-term disability plan unambiguously includes Social Security benefits, whether they are "retirement" benefits based on the recipient's age or "disability" benefits based on the recipient's disability status.  The definition explicitly includes amounts paid as a "primary old age insurance benefit and disability payment," contrary to Plaintiff's contention that only his disability benefit could cause a reduction.

Plaintiff argues the "upon disability under the Federal Social Security Act" clause limits the scope of "primary old age insurance benefits" that fall within the definition.  This argument lacks merit because it would require an illogical interpretation of the plan language.  Plaintiff's argument suggests that some old-age Social Security benefits are available "upon disability" while others are available upon some other condition – presumably old age.  In fact, the Social

---

[1] Letters from the Social Security Administration ("SSA") included in the Administrative Record indicate Tolbert's Social Security benefits, as rounded down to the whole dollar by SSA, were $1,864 in January 2007, then increased to $1,951 per month from February to April 2007.  The SSA explained that Tolbert "became disabled according to our rules on September 1, 2006" and after being "disabled for 5 full calendar months in a row" was entitled to disability benefits in February 2007.  However, the SSA also noted that Tolbert had "reached full retirement age" and therefore it "changed [his] disability claim back to retirement benefits effective in April 2007." Although not clear from the record, Tolbert's Social Security benefits presumably returned to $1,864 in May 2007.  Tolbert identifies the additional $87 per month he received from February to April 2007 as the only portion of his Social Security benefits that may offset his long-term disability benefits from Southern Farm.

[2] Despite Southern Farm's position that Tolbert's disability benefits were subject to offset from all Social Security benefits, it only demanded repayment of $1,864 on account of Social Security benefits from January through April 2007, even though Tolbert's Social Security benefits were $1,951 per month in three of those four months.

4

Security statutory scheme provides that an applicant's age, not disability status, controls eligibility for old-age benefits. *See* 42 U.S.C. § 402(a) (2010).[3] Plaintiff cites no part of the Social Security Act that would corroborate his interpretation of the plan language that some old-age benefits are available "upon disability."

Plaintiff's proposed reading of the "Primary Insurance Amount" definition does not create ambiguity from language that is clear. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 n. 7 (6th Cir. 1998) ("mere disagreement between parties does not create ambiguity in the legal sense"). Because the plan's language is clear, the Court does not apply the *contra proferentem* rule of construction that would construe ambiguities against Southern Farm as the drafting party. *Id.* The natural reading of the definition is that the "upon disability" clause only pertains to disability benefits. Whether designated as primary old age insurance benefits or disability benefits, payments from the SSA will offset the benefits paid under the long-term disability plan.

IV.

The clarity of the plan's language is sufficient for the Court to determine that Southern Farm's reduction of Tolbert's benefit was appropriate. However, because both parties supported their arguments with the same language in an agreement Tolbert signed before receiving disability benefits from Southern Farm, the Court will address that language briefly. The

---

[3]To receive old-age insurance benefits, an applicant must be 62 years old, "a fully insured individual" as defined elsewhere in the statute, and have either filed an application for old-age insurance benefits or have been entitled to disability insurance benefits prior to reaching a statutorily-defined retirement age. This last requirement means that a person already receiving disability benefits from SSA does not have to file a new application to receive old-age benefits. Instead, "at full retirement age [one's] disability benefits will be automatically changed to old-age benefits." 20 C.F.R. § 404.316(b)(2) (2010). A person of retirement age is not entitled to disability benefits. 42 U.S.C. § 423(a)(1)(B) (2010).

agreement provided in relevant part:

> "As a condition of this payment, I agree to reimburse Southern Farm Bureau Life
> Insurance Company for any disability benefits paid for a period which said
> insured is entitled to Social Security and/or Workman's Compensation Benefits
> by reason of temporary total, temporary partial, or permanent partial disability.
> All payments by Southern Farm Bureau will be deemed an advance of such
> benefits due said insured and Southern Farm Bureau Life Insurance Company will
> be entitled to be reimbursed the full amount of such payment(s) out of any
> awardment by the Social Security Administration or Workman's Compensation."

Plaintiff argues the agreement confirms his interpretation of the long-term disability plan

because it obligates him to repay only those Social Security benefits to which he is entitled "by

reason of temporary total, temporary partial, or permanent partial disability."  Plaintiff misreads

the "by reason of" clause to modify "Social Security," where in fact it only pertains to "Worker's

Compensation."  The terms used in that clause – temporary total, temporary partial, and

permanent partial disability – are terms of art in Worker's Compensation statutes.  *See, e.g.*,

Tenn. Code Ann. § 50-6-207 (2011); Ky. Rev. Stat. Ann. § 342.0011 (LexisNexis 2011); Ohio

Rev. Code Ann. Ch. 4123 (2011); 33 U.S.C. § 908 (2010) (federal longshore and harbor

workers' compensation).  They have little relevance to Social Security benefits.  Consistent with

the "Benefit Reductions" section of the long-term disability plan, the agreement provides that

Southern Farm's benefits payments will be considered advances of any award of Social Security

benefits and that Tolbert must reimburse Southern Farm the full amount from such award.

V.

Plaintiff also challenges the reduction of his life insurance coverage from $38,291 to

$5,000.  The life insurance policy contains a "coverage table" that classifies policyholders (KFB

employees) based on various characteristics and indicates the coverage amount for individuals in

6

each group.  Prior to Tolbert's 65th birthday in late August 2006, he was in class 4.7 under the

policy because he was an "active full-time salaried employee[] under the age 65" and had

worked at least ninety days.  As a part of class 4.7, Tolbert had a coverage amount of "Salary

Multiple[4] Plus $10,000."  As explained in a letter from Southern Farm to David Holliger, a KFB

Compensation and Benefits Manager, Tolbert moved to class 4.8 when he turned 65 years old.

The coverage amount for class 4.8 was "Salary Multiple Plus $10,000 Reduced to 65%."

Tolbert's coverage amount changed again because he retired, moving him to class 4.25: "Former

full-time salaried employees who were actively employed on or after October 20, 1981 and have

attained at least age 65 while in the service of said organization."  The coverage amount for this

class is $5,000.

   Plaintiff concedes Southern Farm was authorized to adjust his coverage to 65 percent of

his prior coverage amount upon his turning 65 years old – the class 4.8 level.  He contests the

further reduction in his coverage to $5,000, arguing that the policy required his coverage amount

to remain at the class 4.8 level during a period of disability.  Essentially, Plaintiff claims that his

coverage must be frozen at class 4.8, even though the policy would reclassify a non-disabled

person in Plaintiff's position to class 4.25 and reduce his or her coverage to $5,000.

   The life insurance  policy states: "The amount of insurance that will be continued is the

same as the amount of Term Life Insurance that was in force at the start of the disability.  That

amount will reduce and terminate at the age shown in the Coverage Schedule as if the person

were not disabled."  This provision means that insurance coverage continues for a disabled

---

[4] "Salary Multiple" is later defined in the policy as "1.04 times the first $400 monthly compensation plus 2 times excess of monthly compensation over $400, total times years of service."

person as it would for a non-disabled person under the policy. It does not mean that a disabled retiree is entitled to more coverage than a non-disabled retiree. Although the parties disagree as to the exact timing and circumstances of Tolbert's retirement, it is undisputed that Tolbert elected retirement benefits in May 2007. Once he made that election, Southern Farm had notice that Tolbert was retired and adjusted his life insurance coverage accordingly. This action followed the clear terms of the life insurance policy.

VI.

Southern Farm has moved for summary judgment on its counterclaim to recover $10,661.15 pursuant to the terms of the long-term disability plan and the agreement dated January 19, 2007. No genuine issue of material fact exists as to Southern Farm's right to recover and the Court has already determined that the long-term disability plan required a reduction of Tolbert's benefits in the amount of Social Security payments he began receiving in January 2007. Likewise, Tolbert has conceded that his benefit was appropriately reduced by the amount of his monthly pension payments. The receipt of Social Security and pension payments through April 2007 created an overpayment to Tolbert for which he is obligated to reimburse Southern Farm. The January 19th agreement specified that Tolbert's receipt of payments from Southern Farm was conditioned on his obligation to reimburse overpayments due to a Social Security benefit offset.

Nevertheless, some uncertainty remains as to the precise amount which Tolbert may be required to reimburse. The Court will set a conference to discuss this issue.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED.

8

IT IS FURTHER ORDERED that Defendant Kentucky Farm Bureau Mutual Insurance Companies' motion for summary judgment is SUSTAINED and Defendant is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant Southern Farm Bureau Life Insurance Company's determination of Plaintiff's long-term disability benefits and life insurance coverage amount is AFFIRMED.

IT IS FURTHER ORDERED that Counterclaim Plaintiff Southern Farm Bureau Life Insurance Company's motion for summary judgment is DENIED at this time.

The Court will set a conference in the near future to discuss the issue in the Southern Farm's counterclaim.

cc:     Counsel of Record